<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SHARON OTERO, et al.,** | |
| **Plaintiffs,** | **Civil Action No. 14-1655 (ES)** |
| **v.** | **OPINION** |
| **PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al.,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendants' motion to dismiss Counts I through VI of Plaintiffs' Fourth Amended Complaint.  (D.E. No. 66).  The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, the Court grants Defendants' motion to dismiss.

**I.   Factual and Procedural Background**

Plaintiffs are fifty-six individuals who served as police officers in the Port Authority Police Department ("PAPD") at all times material to the Complaint.  (D.E. No. 62, Fourth Amended Complaint ("Compl.") ¶¶ 10-65).

On March 3, 2010, PAPD announced that it would be conducting a promotion examination for the rank of sergeant.  (*Id.* ¶ 91).  All fifty-six Plaintiffs took the exam, which was held on or about April 17, 2010, and each Plaintiff received a passing score of seventy percent or greater.  (*Id.* ¶¶ 95, 97-98).  Accordingly, Plaintiffs were among the 465 officers placed on the Police Sergeant Horizontal Roster ("horizontal roster").  (*Id.* ¶¶ 97-98).  Officers on the horizontal roster were

eligible to proceed to the next phase of the promotion process, which consisted of evaluation by PAPD's Promotion Review Board and an interview with a rotating three-person panel of members from PAPD's Public Safety and Human Resources departments. (*Id.* ¶ 99).

Pursuant to the March 3, 2010 announcement, when a vacancy for a sergeant position became available, PAPD's Office of the Inspector General would oversee the random selection of candidates to proceed to the next phase of the promotion process. (*Id.* ¶ 100). Police Superintendent Michael Fedorko was to make the ultimate decision of whom to promote from among the candidates evaluated by the Promotion Review Board. (*Id.* ¶ 113).

On June 22, 2011, PAPD issued a promotional posting indicating vacancies in the sergeant position. (*Id.* ¶ 115). Pursuant to the posting, sixty of the 465 officers on the horizontal roster were selected for evaluation by the Promotion Review Board, (*id.* ¶ 120), and interviews were held on or about June 25-27, 2011, (*id.* ¶ 121). Superintendent Fedorko selected fourteen officers for promotion from among the sixty evaluated by the Promotion Review Board. (*Id.* ¶ 125).

On November 21, 2012, PAPD issued another promotion announcement, which amended the attendance requirements for promotion as well as the selection process by which candidates on the horizontal roster were to be selected for evaluation by the Promotion Review Board. (*Id.* ¶¶ 143, 145, 146). Instead of random selection of candidates from the horizontal roster for promotion, the announcement mandated that all candidates on the horizontal roster would be evaluated for promotion. (*Id.* ¶ 146). Nevertheless, several Plaintiffs allege that they were not evaluated as required by the November 21, 2012 promotion announcement. (*Id.* ¶ 147). Pursuant to the November 21, 2012 announcement, PAPD promoted thirteen candidates from among those remaining on the horizontal list. (*Id.* ¶ 152).

According to the Complaint, in February of 2013, PAPD evaluated the remaining candidates who were not previously considered pursuant to the November 20, 2012 promotion announcement.  (*Id.* ¶ 159).  On July 29, 2013, Superintendent Fedorko announced that twenty-nine additional officers would be promoted to sergeant.  Additionally, between January and August of 2014, PAPD indicated in three separate promotional announcements that a further forty-four officers would be promoted.  (*Id.* ¶¶ 174-187).  As of the date of the Complaint, however, none of the Plaintiffs were among those candidates selected for promotion to sergeant.  (*Id.* ¶ 193).

Plaintiffs allege that throughout this promotion process, PAPD "engaged in cronyism, nepotism and unlawful practices, which deprived the Plaintiffs from receiving a fair and impartial promotional process for the rank of Sergeant."  (*Id.* ¶ 3).  Specifically, Plaintiffs allege that Defendants  failed to conduct the sergeant promotional process "as guaranteed by law and by Port Authority Policy" by: (1) disclosing oral interview questions and providing interview advice in advance to some candidates and not others; (2) applying post-exam evaluation criteria unequally; (3) providing preferential treatment to some candidates because of improper influence put forward on their behalf; and (4) failing to adhere to a requirement to base promotion decisions on the merit and fitness of individual candidates.  (*Id.* ¶ 4).

Additionally, Plaintiffs Ortiz and Kruesi individually allege that they were denied an opportunity for promotion due to Defendants' retaliation against those Plaintiffs for (1) conducting union activities and (2) filing formal complaints against several Defendants alleging discrimination and retaliation.  (*Id.* ¶¶ 652-730, 2062-2121, Counts V and VII).  And finally, Plaintiff Otero alleges that she was denied an opportunity for promotion due to a disability she developed as a first responder to the terrorist attacks of 9/11.  (*Id.* ¶¶ 211-53, Count VIII).

The three original plaintiffs, Otero, Pisciotta, and Escobar, initiated this action by filing a Complaint on March 14, 2014.  (D.E. No. 1).  Defendants filed a motion to dismiss the Complaint on April 28, 2014, (D.E. No 5), and the plaintiffs requested leave to file an Amended Complaint on June 23, 2014, (D.E. No. 18).  Forty-seven of the current plaintiffs initiated a related action on June 9, 2014 by filing a complaint in *Arias, et at. v. Port Authority of New York and New Jersey, et al.*, No. 14-3568.

Pursuant to a teleconference held by the Court on September 22, 2014, the Court consolidated this action and *Arias* together under this caption and granted Plaintiffs leave to file an Amended Complaint.  (D.E. No. 30).  Plaintiffs filed a consolidated Amended Complaint on October 3, 2014, (D.E. No. 33), and a Second Amended Complaint on October 17, 2014, (D.E. No. 35).[1]  Defendants moved to dismiss the Second Amended Complaint, (D.E. No. 42-1 to 42-10), and Plaintiffs filed a Third Amended Complaint on April 13, 2015, while the motion was pending, (D.E. No. 56).

The Court then granted Plaintiffs leave to file a Fourth Amended Complaint, (D.E. No. 60), which Plaintiffs filed on June 5, 2015, (D.E. No. 62).[2]  Defendants filed a motion to dismiss the Fourth Amended Complaint on July 2, 2015.  (D.E. No. 66-17, Memorandum of Law in Support of Motion to Dismiss the Fourth Amended Complaint, ("Def. Mov. Br.")).  Plaintiffs filed an opposition brief on August 10, 2015, (D.E. No 76, Defendants' Response to Plaintiffs' Motion to Dismiss ("Pl. Opp. Br.")), and Defendants filed a reply brief on August 31, 2015, (D.E. No. 78, Memorandum of Law in Further Support of the Motion to Dismiss the Fourth Amended Complaint, ("Def. Rep. Br.")).  On February 29, 2016, and March 1, 2016 respectively, Plaintiff

---

[1] The Second Amended Complaint added three additional Plaintiffs to the case, bringing the total number of Plaintiffs to fifty-three.  (*Cf.* D.E. Nos. 33, 35).
[2] The Fourth Amended Complaint added three additional Plaintiffs to the case, bringing the total to fifty-six. (*Cf.* D.E. Nos. 35, 66).

submitted to the Court copies of the promotion announcements and employment agreement which were referenced in the Complaint.  (D.E. No. 103-1, Promotion Evaluation Announcements ("Promotion Announcement")[3]; D.E. No. 105-1, Port Authority Memorandum of Agreement ("MOA")).  The matter is now ripe for resolution.

## II.    Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  That statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted).  Although the pleading standard announced by Rule 8 does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For a complaint to survive dismissal pursuant to Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the

---

[3] Because the Promotion Announcement submission is not consecutively paginated, the Court will refer to individual pages of this submission by reference to the page numbers assigned by ECF.

5

non-moving party.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Additionally, a district court deciding a motion to dismiss generally does not consider materials beyond the pleadings.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011).  An "exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment."  *In re Burlington Coat Factory*, 114 F.3d at 1426 (alteration in the original and internal quotation marks omitted).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  *Pension Benefit Guar. Corp.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 245.

## III.   Discussion

The Fourth Amended Complaint contains eight separate Counts that can be grouped as follows: (1) Counts I, II, III, and VI allege violation of Plaintiffs' due process rights pursuant to 42 U.S.C. § 1983; (2) Counts V and VII allege First Amendment retaliation pursuant to 42 U.S.C.

§ 1983; (3) Count IV alleges breach of contract; and (4) Count VIII alleges discrimination on the basis of disability in violation of the Americans with Disabilities Act. (*See* Compl. ¶¶ 2280-2305).

Defendants argue that Counts I through VI should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and that Count IV should also be dismissed for failure to exhaust available contractual remedies. (*See generally*, Def. Mov. Br.). As Plaintiffs note in their opposition brief, Defendants' moving brief does not address Counts VII and VIII. (Pl. Opp. Br. at 2-3 n.1). Accordingly, the Court will consider each of Defendants' arguments in favor of dismissing Counts I through VI below.

### A. Breach of Contract

Count IV of the Fourth Amended Complaint alleges breach of contract deriving from Defendants' failure to follow provisions of the Memorandum of Agreement ("MOA") regarding the sergeant promotional procedure. (Compl. ¶¶ 2312-2317). Defendants argue that Count IV should be dismissed for failure to exhaust the MOA's remediation procedures prior to bringing the claim in district court. (Def. Mov. Br. at 21-24).

Where an employee brings a claim against his employer for breach of an employment agreement, "it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement" prior to bringing the claim in federal court. *Vaca v. Sipes*, 386 U.S. 171, 184 (1967). However, courts have established several exceptions to the exhaustion requirement, including (1) where resorting to the grievance procedure would be futile, (2) where the employer repudiated the collective bargaining agreement, or (3) where the union breached its duty of fair representation, *i.e.*, arbitrarily refusing or perfunctorily handling the grievance. *Hendricks v. Edgewater Steel Co.*, 898 F.2d 385, 388 (3d Cir. 1990) (citing *Vaca*, 386 U.S. at 187). Defendants cite *Vaca* for the additional proposition that courts may excuse

a plaintiff's failure to exhaust where "the jurisdiction of the administrative tribunal is doubtful." (Def. Mov. Br. at 21-22 (citing *Vaca*, 386 U.S. at 185)).  Without a finding that the plaintiff employee's situation falls into one of these categories, the employee's breach of contract claim is barred by his failure to attempt to utilize the employment agreement's mandatory grievance procedures.  *Hendricks*, 898 F.2d at 388.

In arguing that Plaintiffs failed to exhaust available grievance procedures, Defendants point to paragraph VI of Appendix J of the MOA, which states that "[a] charge that the Port Authority has violated a procedural matter in this Police Sergeant Promotion Evaluation Procedure shall be submitted to the Port Authority Employment Relations Panel for an expedited determination." (MOA at 162; Def. Mov. Br. at 22).  Defendants note that the Fourth Amended Complaint contains no allegations that Plaintiffs attempted to make use of this remedial procedure, and the Court agrees.

Plaintiffs present several arguments supporting the contention that their failure to exhaust available grievance procedures should be excused.  First, Plaintiffs argue that exhaustion would be futile because "no adequate remedies are available."  (Pl. Opp. Br. at 41).  In support, Plaintiffs note that section XXII and paragraph V of Appendix J of the MOA "clearly state that the grievance-arbitration procedure provided for in the MOA is not applicable to the Police Sergeant Promotion Procedure."  (*Id.*).

But, as Defendants correctly note, (Def. Rep. Br. at 19-20), Plaintiffs' argument appears to wholly ignore paragraph VI of Appendix J of the MOA, which sets out a separate avenue to address violations of certain procedural matters through the Port Authority Employment Relations Panel. As noted above, paragraph VI indicates that the Panel is available to consider a charge—such as Plaintiffs'—alleging that PAPD violated its own promotion procedures.  (*See* MOA at 162).  Thus,

contrary to Plaintiffs' contentions, the MOA does appear to provide for a remedial procedure that is available to challenge aspects of the sergeant promotional procedure.  Accordingly, Plaintiffs' futility argument fails.

Next, Plaintiffs argue that, while the MOA may provide certain appeal rights, the March 3, 2010 promotion evaluation announcement repudiates any such remedies because, "[b]y the very terms of the promotional announcement, the candidates had no administrative remedy available to them in order to challenge the results of the promotional examination."  (Pl. Opp. Br. at 42).  In making this argument, Plaintiff appears to be referencing paragraph J of the promotion evaluation announcement, which provides for an Appeal Board that "will act as the sole and final administrative appeal forum with respect to those matters within its jurisdiction."  (Promotion Announcement at 2).

However, the Court notes that this same section of the promotion evaluation announcement further provides that "only those candidates who do not achieve a passing score on the written test will be permitted to submit an appeal" to the Appeal Board.  (*Id.*).  Thus, this provision explicitly limits the jurisdiction of the Appeal Board to complaints brought by promotion candidates who fail the written test and believe the test was graded in error.

Here, each Plaintiff passed the written exam and was accordingly placed on the horizontal roster.  (Compl. ¶¶ 95, 97-98).  Because the Appeal Board's jurisdiction is limited to hearing grievances regarding *failed* examinations, the Court agrees that Plaintiffs were not eligible to file a grievance with the Appeal Board.  The Court further agrees that, as noted above, Plaintiffs were not eligible for the "grievance-arbitration procedure," pursuant to paragraph V of Appendix J of the MOA.

9

Despite the fact that Plaintiffs were ineligible to appeal to the Appeals Board, (Promotion Announcement at 2), and was ineligible to participate in the grievance-arbitration procedure, (MOA at 162), they nevertheless *were* eligible to submit "a charge that the Port Authority has violated a procedural matter in [the] promotion evaluation procedure" to the Port Authority Employment Relations Panel.  (MOA at 162).  There is no suggestion that paragraph V of appendix J of the MOA, or paragraph J of the March 3, 2010, promotion announcement, limit the applicability of the Port Authority Employment Relations Panel to Plaintiffs' situation, and Plaintiffs' brief provides no support for this position.  Indeed, as noted above, Plaintiffs' brief wholly ignores the existence of the Port Authority Employment Relations Panel as set out in paragraph VI.  For that reason, Plaintiffs' repudiation argument fails.

Furthermore, while the Court would be hesitant to require a plaintiff to make use of a contract-based appeals or grievance procedure where the jurisdiction of the grievance forum is in doubt, the Court notes that the Port Authority Employment Relations Panel's jurisdiction to hear employee complaints is well established.  The Port Authority Employment Relations Panel was established by resolution of the Port Authority of New York and New Jersey adopted September 29, 1976, and its authority is codified in New Jersey law by N.J.S.A. § 32:1-175.  *See In re Alleged Improper Practice Under Section XI, Paragraph A(d) of the Port Auth. Labor Relations Instruction*, 194 N.J. 314, 327 n.8 (2008).  N.J.S.A. § 32:1-175 also provides for several avenues of appeal from a decision of the Port Authority Employment Relations Panel, including that such decisions "shall be . . . reviewable . . . by action in lieu of prerogative writs" brought in the Law Division, Civil Part, of New Jersey Superior Court.  N.J.S.A. § 32:1-175; *see also* N.J. Ct. R. 4:69-1.

Based on this analysis, the Court concludes that Plaintiffs have failed to meet any of the exceptions to the rule requiring an attempt to exhaust grievance procedures available under the employment agreement prior to bringing a claim for breach of that contract in District Court. *See Hendricks*, 898 F.2d at 388. Accordingly, the Court dismisses Count IV.

### B.  Due Process Violation

Counts I, II, III, and VI of the Fourth Amended Complaint allege a violation of Plaintiffs' Fourteenth Amendment substantive and procedural due process rights under 42 U.S.C. § 1983, arising from PAPD's alleged failure to follow certain promotional procedures set forth in the MOA, promotional evaluation announcements, and the New Jersey State Constitution. (Compl. ¶¶ 2280-2311, 2326-2338).[4]  To state a claim under § 1983, "the plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Thus, in order to determine whether a federal right has been violated, a court must "identify the exact contours of the underlying right said to have been violated." *Id.*

To prevail on either a substantive or procedural due process claim challenging a state actor's conduct, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v.*

---

[4] The Court notes that Counts I, II, III and VI allege both individual liability against the individual Defendants, as well as municipal liability against Defendant Port Authority pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (*See* Pl. Opp. Br. at 35-38). Under *Monell*, "a municipality may incur liability under § 1983 only when its policy or custom causes a particular constitutional violation." *Marable v. W. Pottsgrove Twp.*, 176 F. App'x 275, 282-83 (3d Cir. 2006). In determining *Monell* liability, courts will determine first whether a constitutional injury occurred, and second, whether the injury resulted from a "policy or custom" of the municipal defendant. *Id.* at 283.
   Accordingly, the Court's analysis of Counts I, II, III, and VI turns on whether Plaintiffs have sufficiently alleged the underlying violation of their Fourteenth Amendment due process rights against both individual and municipal Defendants. *See id.* The Court need not determine the existence of a "policy or custom" of due process violations by Port Authority, because, as discussed below, the Court finds that Plaintiffs fail to sufficiently allege that a due process violation occurred in the first instance.

*Pennsylvania State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 234-35 (3d Cir. 2006).

Defendants argue that Plaintiffs' substantive and procedural due process claims must each be dismissed for failure to sufficiently allege a violation of a federally protected property interest. (Def. Mov. Br. at 8). The Court will address the sufficiency of Plaintiffs' substantive and procedural due process claims separately below.

### 1.   Procedural Due Process

In order to state a claim for a procedural due process violation under 42 U.S.C. § 1983, a plaintiff must show that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [the plaintiff] did not provide 'due process of law.'" *Eggert v. Bethea*, 625 F. App'x 54, 56 (3d Cir. 2015) (citing *Hill*, 455 F.3d at 234). Defendants argue that Plaintiffs' procedural due process claims should be dismissed for failure to meet the first element—namely, that "plaintiffs fail to allege a deprivation of a federally protected right." (Def. Mov. Br. at 10).

Plaintiffs allege a protected property interest in several aspects of PAPD's sergeant promotional procedure. (*See* Compl. ¶ 2278). A protected property interest in aspects of employment may be created "by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Baraka v. McGreevey,* 481 F.3d 187, 205 (3d Cir. 2007) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). To possess such a property right, "a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim for entitlement to it." *Roth*, 408 U.S. 564, 577 (1972).

"Legitimate claims of entitlement may be created expressly by state statute or regulation or may arise from government policies or 'mutually explicit understanding' between a government employer and employee." *Newark Branch, N. A. A. C. P. v. Town of Harrison*, 940 F.2d 792, 809 (3d Cir. 1991) (quoting *Perry v. Sinderman*, 408 U.S. 593, 601-02 (1972)).  Such mutually explicit understandings may be established in part by provisions of employment contracts, and "may be supplemented by other agreements implied from [a party's] words and conduct in the light of the surrounding circumstances."  *Perry*, 408 U.S. 593, 602.

In this case, Plaintiffs allege that they possess

> a property right to their continued employment and its prerequisites, including, but not limited to,  a fair and impartial promotional process, the right to appeal and have a hearing, the right to be fairly considered for promotion based on merit and fitness and to not be denied promotion based on decisions made arbitrarily and capriciously.

(Compl. ¶ 2278.  The separately alleged property interests in (1) a "fair and impartial promotional process," (2) being "fairly considered for promotion based on merit and fitness," and (3) not being "denied a promotion based on decisions made arbitrarily and capriciously" appear to be duplicative of one another, and the Court is unable to discern a meaningful distinction between them.  Therefore, the Court construes the Complaint to be asserting two independent property interests: "the right to be fairly considered for promotion based on merit and fitness" and "the right to appeal and have a hearing."  (*See id.*).  The Court will separately address whether the first element of a procedural due process claim has been met with respect to each alleged property interest.

### a.  The Right to Be Fairly Considered for Promotion Based on Merit and Fitness

Plaintiffs argue that specific language in the MOA, promotion evaluation announcements, and a state constitutional provision grants them a "legitimate expectation that the promotion process would be conducted fairly and in an unbiased manner, and that the promotional policies

and criteria would be followed." (Pl. Opp. Br. at 26-27). First, Plaintiffs point to Appendix J, paragraph I.C of the MOA, which states that each announcement for promotional opportunities shall contain "the criteria to be utilized for and the weight to be given to the elements of evaluation." (Pl. Opp. Br. at 27; MOA at 162). Second, Plaintiffs point to paragraph L of the March 3, 2010 promotion evaluation announcement, which states that all promotional candidates "must meet all promotional screening criteria on the Police Sergeant Roster Promotion/Development Appraisal form" in order to be promoted. (Pl. Opp. Br. at 27; *see also* Promotion Announcement at 3).[5] And third, Plaintiffs point to the "merit and fitness" clause of the New York and New Jersey state Constitutions, which require that civil-service promotion decisions "shall be made according to merit and fitness." (Pl. Opp. Br. at 29 n.18 (citing N.Y. Const. Art. V, § 6; N.J. Const. Art. VII, § 1)).

However, these provisions cannot serve as the basis of a federally protected property interest in the general fairness of PAPD's promotion process. In arriving at this conclusion, the Court looks to *Kaminski v. Twp. of Toms River*, 595 F. App'x 122 (3d Cir. 2014), in which the Third Circuit declined to find a property interest in similar contractual and statutory provisions under analogous factual circumstances. As in this case, the plaintiffs in *Kaminski* were police officers who successfully passed a promotion exam but were ultimately not selected for promotion by their municipal employer. *Id.* at 125-26. The plaintiffs sued the municipal employer for violation of their procedural due process rights (among other claims), alleging that they "were deprived of a fair, transparent promotional process and were arbitrarily denied promotions in violation of due process." *Id.* at 124. Specifically, plaintiffs alleged that they possessed a protected

---

[5] The eligibility criteria set out in one "Promotion/Development Appraisal form" referenced by Plaintiffs include a requirement that the candidate be on the horizontal roster; have three or fewer "sick absence occasions"; have eleven or fewer "sick days"; be free of disciplinary charges for the last twelve months; and be free of sustained civilian complaints in the last 12 months. (D.E. No. 66)

property interest in a "fair and unbiased promotional examination," and that the municipal employer violated this interest. *Id.* at 125.

As authority for this property interest, the *Kaminski* plaintiffs pointed to a state statute requiring the municipal defendant to give "due consideration" to promotional candidates' "length and merit of his service and preference shall be given according to seniority in service." *Id.* at 126 (citing N.J.S.A. 40A:14-129).   The plaintiffs also pointed to a provision of the employment contract between the municipal defendant and their union, which provided for "trained evaluators," "training for evaluators," and "monitoring [of] the evaluation of candidates." *Id.*

In holding that these provisions did not create a protected property interest in a "fair and unbiased promotion examination" as alleged by the plaintiffs, the court noted that

> [t]he statute and ordinance do set out certain requirements, including that merit of service be considered.  But plaintiffs have, without support, extrapolated a general intent that the process be "fair and transparent," and argue from this premise that they have an interest in a host of *other* characteristics that they contend the process requires.  They do not provide authority for why the language in these provisions must be read to include the features they want, or, more generally, for why their expectation that the process would include those features was anything but unilateral.

*Id.*  In conclusion, the court held that these provisions "do not impose general requirements on the [promotion] process beyond what they actually say, and surely do not confer an entitlement to a promotional examination with features amounting to plaintiff's concept of what is 'fair.'" *Id.*

Here, the Court concludes that paragraph I.C of Appendix J of the MOA, paragraph L of the March 3, 2010 promotional announcement, and the New Jersey or New York state Constitutions do not establish a protected property right in the right to a fair and unbiased promotional process.   While these provisions may set out certain requirements for the Port Authority to follow in conducting the sergeant promotional process, the Court is not convinced

that the cited language of these provisions must be read to create a general requirement of "fairness" and "uniformity" in the promotional process.

In support of their position, Plaintiffs cite to *Firefighters United For Fairness v. City of Memphis*, 362 F. Supp. 2d 963, 971 (W.D. Tenn. 2005), for the proposition that a promotion candidate may possess a protected property interest in the fairness of the employer's promotion process. (Pl. Opp. Br. at 24-25). In that case, the court held that the "plaintiffs do have a property interest in the mutually held expectation that their [promotion exams] will be graded fairly and accurately, and that the tests will be a major factor in the City's promotional decisions." *Firefighters United For Fairness*, 362 F. Supp. 2d at 971.

However, *Firefighters* is distinguishable from the case at bar. In that case, the municipal employer agreed to maintain specific testing and grading procedures, including videotaping and transcribing interviews, preserving the anonymity of interview graders, and considering candidates' specific concerns with their initial grading. *Firefighters United For Fairness*, 362 F. Supp. 2d at 967. Significantly, the court found that the municipal employer had explicitly "ensured the reliability of each single assessor's scoring . . . and therefore was certain that the assessor was qualified to render a fair and accurate score. . . ." *Id.* The court held that the agreement setting out these procedures created a protected property right for the plaintiff employees, and that the violation of these testing procedures could constitute a due process violation. *Id.* at 971.

Unlike the explicit assurances of procedural accuracy and reliability made by the employer in *Firefighters*, the provisions cited by Plaintiffs contain no explicit reference to the fairness, accuracy, or uniformity of PAPD's sergeant promotion procedure. Rather, like the plaintiffs in *Kaminski*, Plaintiffs seek to extrapolate assurances of fairness from contractual provisions where no such explicit assurances exist. But, Plaintiffs provide no support for the proposition that these

16

provisions must be read to include such assurances.[6]  Neither do Plaintiffs provide any support for the proposition that the promise of procedural "fairness" was "mutually explicit" between Plaintiffs and PAPD.  Therefore, the Court concludes that the cited contractual and constitutional provisions do not rise to the level of a federally protected property interest in the fairness of the sergeant promotion procedure.  *See Kaminski*, 595 F. App'x at 126.

Even if Plaintiffs had sufficiently alleged a property interest based on paragraph I.C of Appendix J of the MOA, paragraph L of the March 3, 2010 promotion evaluation announcement, or a state Constitutional provision, Plaintiffs fail to sufficiently allege that they were deprived of that interest.  For example, Plaintiffs allege that Defendants violated their protected property interest by promoting officers who were "less qualified than the plaintiffs and/or not qualified for promotion."  (Compl. ¶ 2290; see also *id.* ¶¶ 2302, 2310, 2334).  Plaintiffs also allege that Defendants violated their protected property interests when Defendant Ferrigno, a Lieutenant assigned to supervise PAPD's police academy, provided certain candidates with answers to interview questions ahead of time, thereby giving them an unfair advantage in the promotional process.  (Compl. ¶ 132; *see also id.* ¶¶ 107, 124, 151, 163, 182, 197-210).  Additionally, many individual Plaintiffs allege that they were deprived of a protected property right when they were "denied access and/or review of [their] interview results, scores, or comparative results," despite the fact that other candidates had been informed of their results.  (*See, e.g.*, Compl. ¶¶ 287-288, 341-342, 376-377, 408-409).

---

[6] Regarding Plaintiffs' attempt to ground the alleged right to fair promotion procedures in the "merit and fitness" clause of the New Jersey and New York constitutions, New Jersey Courts have explicitly declined to read this clause "to mean any more than it says, nor carry the legislative intention beyond what is expressly or by clear implication called for by the statutes."  *City of Bayonne v. Dougherty*, 157 A.2d 533, 537 (N.J. Super. Ct. App. Div. 1960).  This Court will similarly decline to read the merit and fitness clause to include an unstated requirement of general "fairness" in promoting civil service employees.

However, these allegations cannot support a procedural due process claim. This is because they are not premised on the violation of a specific contractual provision, statute, or case law establishing a protected property right. Rather, the allegations relate to the unequal treatment of individual candidates and the unequal application of procedural rules in the promotion process. Such allegations of inequality may be grounds for an equal protection claim, but do not support Plaintiffs' claim that a protected property right has been violated. *See Beckett v. Dep't of Corr. of Del.*, 981 F. Supp. 319, 332 (D. Del. 1997) ("[T]he fact that [a hiring procedure] may have been unequally applied . . . may establish an Equal Protection violation but it does not withstand a substantive due process analysis.").

Accordingly, the Court dismisses Plaintiffs' procedural due process claims in Counts I, II, III, and VI with respect to the alleged violation of Plaintiffs' right to "be fairly considered for promotion based on merit and fitness."[7] *Id.*; *see also Zavatsky v. O'Brien*, 902 F. Supp. 2d 135, 141 (D. Mass. 2012) (declining to find protected property interest in "fair and merit-based promotional process" and collecting cases).

---

[7] In Plaintiffs' opposition brief, Plaintiffs also argue that PAPD's issuance of a new promotional exam on March 4, 2015 constitutes a "de facto removal from the horizontal roster" in violation of a federally protected property right. (Pl. Opp. Br. at 28). In support, Plaintiffs cite the allegations of a complaint brought in a separate action, *Otero v. Port Authority*, 15-2291-ES-JAD ("*Otero II*"). (*Id.* at 28 n.17). The operative Fourth Amended Complaint in the instant action, on the other hand, contains no allegations relevant to the March 4, 2015 promotional exam.

Significantly, while the Court has consolidated *Otero II* with the instant action purely for discovery purposes, (D.E. No. 98), such consolidation does not extend to the substance of the respective complaints, which remain factually and procedurally distinct. Because of this, and because allegations regarding the March 4, 2015 promotional exam are included only in the *Otero II* complaint, the Court will not address those allegations in the present motion to dismiss. *See Gomez v. Vill. of Sleepy Hollow*, No. 07-9296, 2011 WL 2652439, at *1 n.1, *4 n.6 (S.D.N.Y. July 6, 2011) (declining, at the motion to dismiss stage, to jointly address the allegations of separate complaints in two cases consolidated only for discovery purposes).

#### b.  The Right to Appeal and Have a Hearing

Plaintiffs also argue that a property interest was violated when, "in contravention of the [MOA], candidates were not permitted to grieve the promotional results or appeal any portion [of the promotional process] beyond the written exam."  (Pl. Opp. Br. at 33).  However, the Court's above discussion indicates that, contrary to Plaintiffs' contentions, the MOA sets forth a venue to contest alleged violations of PAPD's sergeant promotional procedure in the Port Authority Employment Relations Panel.  *See supra* Section III.A.

Even if the Court were to consider Plaintiffs' ability to utilize the Port Authority Employment Relations Panel as a protected property interest, Plaintiffs fail to allege that they were deprived of any opportunity to utilize this procedure.[8]  Indeed, as noted above, the Fourth Amended Complaint does not allege any attempt to utilize the Panel, and Plaintiffs utterly ignore its existence in their opposition brief.

Accordingly, the Court dismisses Plaintiffs' procedural due process claims in Counts I, II, III, and VI to the extent they are premised on the violation of Plaintiffs' alleged property interest in the right to "appeal and have a hearing."  *See Croom v. Wagner*, No. 06-1431, 2006 WL 2619794, at *8 (E.D. Pa. Sept. 11, 2006) (dismissing due process claim where, even assuming protected property interest in appeal had been established, plaintiff failed to allege that he had been deprived of that interest).

#### 2.  Substantive Due Process

Plaintiffs also allege substantive due process claims based on the violation of the same property interests discussed above.  (Compl. ¶¶ 2274, 2305).  In contrast to procedural due process,

---

[8] The Court reiterates that the first element of a due process claim requires Plaintiff to sufficiently allege that (1) he possesses a protected property interest, and that (2) he was deprived of this property interest by the defendant.  *See Eggert v. Bethea*, 2015 WL 5049823, at *2.

substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Beckett*, 981 F. Supp. at 331 (citing *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). A property interest protected by the substantive due process clause may not be taken away by the state for reasons that are "arbitrary, irrational, or tainted by improper motive." *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 124 (3d Cir. 2000).

However, "for a property interest to be protected for purposes of substantive due process, it must be 'fundamental' under the United States Constitution." *Hill*, 455 F.3d at 235. Because state-law employment rights "bear[] little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution," courts generally refuse to find fundamental property rights in the employment contract context. *Nicholas*, 227 F.3d at 140 (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229-30 (1985) (Powell, J., concurring)).

Here, as discussed above, each of Plaintiffs' claimed property rights—the right to a fair promotional process and the right to bring a grievance for PAPD's violation of a promotion procedure—arise out of Plaintiffs' employment agreements with PAPD and related New Jersey employment law. Because such employment-related rights "bear little resemblance to the fundamental interests" which enjoy substantive due process protections, the Court cannot say that these rights are in fact "fundamental." *See id.* Accordingly, the Court dismisses Plaintiff's substantive due process claims. *See McGovern v. City of Jersey City*, No. 98-5186, 2006 WL 42236, at *14 (D.N.J. Jan. 6, 2006) (dismissing plaintiff's substantive due process claim "in connection with the issues of wage parity, pension, overtime, promotion to staff Sheriff's Sergeant position, and denial of transfer requests" because those rights were not deemed "fundamental" under Fourteenth Amendment).

### C.  Plaintiff Ortiz's First Amendment Retaliation Claim

Count V of the Fourth Amended Complaint alleges that Defendants Port Authority, Manfredi, and Licorish retaliated against Plaintiff Ortiz in violation of his First Amendment rights. (Compl. ¶¶ 2318-2325).  Specifically, Plaintiff Ortiz alleges that he was retaliated against for filing a series of complaints regarding an incident where Ortiz refused to laugh at Defendant Manfredi's racially charged joke.  (*Id.*).  Defendants argue that Count V should be dismissed because Ortiz's complaints did not deal with "matters of public concern," and were thus not protected by the First Amendment.  (Def. Mov. Br. at 24-26).

In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

In First Amendment retaliation cases, "[t]he threshold inquiry is whether the speech in question is protected by the First Amendment, i.e., whether it relates to 'a matter of public concern.'" *Rowan v. City of Bayonne*, 474 F. App'x 875, 877 (3d Cir. 2012) (quoting *Connick v. Myers,* 461 U.S. 138, 146 (1983)).  A plaintiff's speech implicates a matter of public concern if "the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cty.*, 544 F.3d 542, 548 (3d Cir. 2008).  On the other hand, allegations regarding an employer's actions affecting a specific employee are generally considered grievances of a personal nature which do not rise to the level of a "matter of public concern." *Rowan*, 474 F. App'x at 878. To determine the category into which an individual's speech falls, courts will weigh a number of

factors, including the content, form, context, and primary purpose of the communication.  *Miller*, 544 F.3d at 548; *Azzaro v. Cty. of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997).

Regarding the application of First Amendment protections to employment grievances filed by public employees, the Third Circuit has held that "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  *Watters v. City of Philadelphia*, 55 F.3d 886, 892 (3d Cir. 1995) (quoting *Connick*, 461 U.S. at 146).

Plaintiff Ortiz alleges that he engaged in protected conduct when he submitted a series of six complaints to superior officers and PAPD's Human Resources department alleging discrimination and retaliation.  (Compl. ¶¶ 677, 680, 686, 696-697, 703).  Ortiz's complaints appear to reference a single instance of racial discrimination: in 2009, Defendant Manfredi made a racially disparaging remark about the race of an African American commanding officer in Ortiz's presence, stating "we're gonna have 'Boys in the Hood' up in here" while announcing that officer's new command.  (*Id.* ¶¶ 660-661).  Ortiz did not laugh at the comment, and alleges that Manfredi retaliated against him for refusing to laugh by assigning him to the "least desirable posts."  (*Id.* ¶ 662).  Ortiz alleges in later complaints that he suffered additional retaliation at the hands of Defendants Manfredi and Licorish resulting from Ortiz's initial complaint which referenced the racially charged remark.  (*Id.* ¶¶ 680, 686, 696).

These facts are similar to those in *Rowan*, 474 F. App'x at 876-79.  There, a supervisor for the defendant-employer used a racial slur to refer to the plaintiffs, and the plaintiffs filed complaints with the New Jersey Division of Civil Rights and the Equal Employment Opportunity Commission ("EEOC") as a result.  *Id.* at 876.  The plaintiffs filed an additional complaint with the EEOC alleging that the employer retaliated against the plaintiffs for filing the initial

22

complaints. *Id.* In holding that the plaintiffs' complaints were not protected by the First Amendment, the *Rowan* court reasoned that the plaintiffs "did not seek to expose discriminatory or harassing practices by the [defendant employer]; rather, they complained only about isolated acts directed solely at them." *Rowan*, 474 F. App'x at 878.

Similarly here, an analysis of the "content, form, context, and primary purpose" of Ortiz's complaints indicates that the grievances were primarily personal in nature and did not rise to the level of a "matter of public concern." *Rowan*, 474 F. App'x at 878. For example, the complaints submitted by Ortiz reference a single instance of discriminatory language directed at a single employee, as well as subsequent retaliation directed solely at Ortiz. Ortiz's six complaints, if viewed in a broader context, overwhelmingly focus on his own treatment at the hands of his superior officers, rather than any harm suffered by the target of Manfredi's discriminatory remarks—or by any other PAPD employee. *See Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 399 (3d Cir. 1992) (finding that an employee's complaints against his employer did not deal with matters of public concern because they "were not made to protect the interests of other employees but only to protect the interests of the complaining employee himself").

Further, each complaint by Ortiz was made internally, either to his supervisors or to PAPD's Human Resources department. (*See* Compl. ¶¶ 677, 680, 686, 696-97, 703). This fact weighs against a finding that Ortiz's complaints were matters of public concern. *See Abernethy v. Mercer*, 532 F. App'x 160, 162 (3d Cir. 2013) (holding that a police officer's "internal grievances" alleging improper behavior by supervisors were "workplace complaints" that were not matters of public concern). And even if the complaints had been more widely publicized, an isolated instance of discriminatory remarks or retaliatory reassignment by a police lieutenant would not likely rise to a matter of public importance to the community at large. *Rowan*, 474 F. App'x at 878 (finding

that "isolated acts" of supervisors directed solely at plaintiffs were not matters of public concern). Based on these factors, it is clear that Plaintiff Ortiz's complaints were personal in nature and their content does not rise to the level of a matter of public concern.  *See id.*

Because of this, the Court finds that Plaintiff Ortiz's complaints are not protected by the First Amendment.  Count V is therefore dismissed.  *See Clayton v. City of Atl. City*, 722 F. Supp. 2d 581, 590 (D.N.J. 2010) (granting motion to dismiss First Amendment retaliation claim where plaintiff "[had] not alleged facts sufficient to establish she was involved in speech involving a matter of public concern").

### D.  Plaintiffs' Remaining Claims

As noted above, Defendants' moving brief does not challenge Count VII or VIII of the Fourth Amended Complaint.[9]  (Pl. Opp. Br. at 2-3 n.1).  Accordingly, the Court will not address the merits of those claims on the present motion to dismiss.  *See V.A. ex rel., M.A. v. New Jersey Nat. Guard Youth Challenge Program*, No. 06-347, 2007 WL 2010940, at *1 n.1 (D.N.J. July 9, 2007) (declining to address arguments in support of motion to dismiss where they were not raised in defendant's moving brief).

## IV.    Conclusion

For the foregoing reasons, the Court dismisses Counts I through VI of the Fourth Amended Complaint without prejudice to Plaintiffs' right to file an Amended Complaint.  An appropriate Order follows this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[9] In Count VII, Plaintiff Kruesi individually alleges First Amendment retaliation against Defendant Port Authority.  (Compl. ¶¶ 2339-2346).  In Count VIII, Plaintiff Otero alleges a violation of the Americans with Disabilities Act against Defendants Port Authority and Fedorko.  (*Id.* ¶¶ 2347-2352).

24