**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARON OTERO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al.,<br><br>Defendants. | Civil Action No. 14-1655 (ES) (JAD)<br><br>OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court by way of Plaintiffs' Motion for Leave to File an Amended Complaint. (ECF No. 145). In accordance with Federal Rule of Civil Procedure 78, the Court did not hear oral argument on Plaintiffs' application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

This matter concerns Defendant Port Authority of New York and New Jersey's ("Port Authority") decisions to promote certain of its police officers to the rank of Sergeant in connection with promotional examinations it conducted in 2010 and 2015, (see generally Fifth Amended Complaint ("5th Am. Compl."), ECF No. 111), and involves claims similar to those at issue in Mendez v. Port Authority of New York and New Jersey, et al., 14-7543 (ES) (JAD) (concerning the Port Authority's promotion of certain officers to the rank of Lieutenant) ("Mendez") and Turano, et al. v. Porth Authority of New York and New Jersey, et al., 16-2578 (ES) (JAD)

(concerning the Port Authority's decision to promote certain officers to the rank of Sergeant in connection with a 2015 examination) ("Turano"). As the Court writes primarily for the parties, it will limit its discussion of the substantial procedural history for this matter to those issues that bear directly on Plaintiffs' pending motion for leave to amend.

On April 28, 2016, Plaintiffs filed their 5th Am. Compl., which remains their operative pleading is this matter. (ECF No. 111). In that pleading, Plaintiffs asserted the following eight causes of action: a claim under 42 U.S.C. § 1983 for Defendants' alleged violation of Plaintiffs' rights under the First Amendment to the United States Constitution (Count I); an action in lieu of prerogative writs pursuant to New Jersey Rule of Court 4:69 (Count II); a claim under the New Jersey Civil Rights Act for Defendants' alleged violation of Plaintiffs' rights under the New Jersey Constitution (Count III); a claim for Defendants' alleged violation of Plaintiffs' rights under the New York Constitution (Count IV); a claim for fraud against all Defendants (Count V); a claim for estoppel against all Defendants (Count VI); Plaintiff Kruesi's claim under 42 U.S.C. § 1983 against Defendant Port Authority for its alleged violation of Kruesi's rights under the First Amendment to the United States Constitution (Count VII); and Plaintiff Otero's claim against Defendants Port Authority and Fedorko for violation of the Americans With Disabilities Act (Count VIII). Defendants filed a motion to dismiss portions of the 5th Am. Compl. on September 21, 2016. (ECF No. 130). Specifically, Defendants sought dismissal of Counts I through VII, as well as dismissal of all claims against the individual defendants. (See generally id.).

On March 31, 2017, while Defendants' motion to dismiss was pending, the Hon. Esther Salas, U.S.D.J., resolved motions seeking dismissal of similar claims in the Mendez and Turano matters. (See ECF No. 41 in Mendez; ECF No. 21 in Turano). In both cases, Judge Salas entered Orders dismissing the plaintiffs' pleadings without prejudice, and directing them to file amended

pleadings addressing the deficiencies that Her Honor had identified in accompanying Opinions. (ECF No. 42 in <u>Mendez</u>; ECF No. 22 in <u>Turano</u>). On April 7, 2017, Plaintiffs' in this matter wrote a letter to Judge Salas stating, in pertinent part, that "[b]ecause the allegations and claims [in <u>Turano</u>] are nearly identical in the instant action, we are assuming (but are not certain) that Your Honor will make similar rulings [on Defendants' motion to dismiss] in the instant <u>Otero</u> action." (ECF No. 143). Plaintiffs therefore requested that "if the Court issues a similar Opinion in the <u>Otero</u> matter as it did in the <u>Turano</u> matter, that the Otero Plaintiffs be granted leave to file an amended pleading to cure the deficiencies identif[ied] therein." (<u>Id.</u>).[1] By Order dated April 11, 2017, Judge Salas denied Defendants' motion to dismiss without prejudice, and directed Plaintiffs to move to amend their pleadings pursuant to Federal Rule of Civil Procedure 15. (ECF No. 144).

On May 2, 2017, Plaintiffs filed a motion for leave to file a Sixth Amended Complaint. Plaintiffs' Proposed Sixth Amended Complaint ("Prop. 6th Am. Compl.") differs from their existing pleading in two significant respects. First, Plaintiffs have withdrawn their claims for estoppel and for an action in lieu of prerogative writs. (<u>Compare</u> 5th Am. Compl., ECF No. 111, <u>with</u> Prop. 6th Am. Compl., ECF No. 145-5). Second, by the Court's count, Plaintiffs have added or modified 31 paragraphs containing factual allegations.[2] Plaintiffs' causes of action remain otherwise unchanged.

---

[1] The <u>Turano</u> plaintiffs also indicated that they planned on moving for reconsideration of Judge Salas's decision on the motion to dismiss. (<u>Id.</u>). Judge Salas has since denied their motion for reconsideration. (ECF Nos. 33 and 34 in <u>Turano</u>).

[2] In making this determination, the Court has relied on Plaintiffs' representation that they have emphasized their new allegations in bold type in their proposed amended pleading. (<u>See</u> Pl. Br at 5, ECF No. 145-4).

## II. LEGAL DISCUSSION

### a. Standard Applicable on Motions for Leave to Amend Under Rule 15

Federal Rule of Civil Procedure 15(a) governs a party's request for leave to amend a complaint and states, in pertinent part, that a party may amend its complaint after obtaining the Court's leave. Fed. R. Civ. P. 15 (a)(2); see also Rivera v. Valley Hospital, Inc., No. 15-5704 (JLL), 2017 WL 916436 at *2 (D. N.J. March, 08 2017) (quoting Wright & Miller § 1484, at 676). The Rule directs that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2). This standard ensures that claims are decided on their merits rather than on mere technicalities. See Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (citing Wright, Miller and Kane, Federal Practice and Procedure, Vol. 6 § 1471 at 505 (2d ed. 1990)).

While District Courts are vested with the broad discretion to grant or deny a motion for leave to amend under Rule 15(a), Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993) (noting "the grant or denial of leave to amend is a matter committed to the sound discretion of the district court"), they must exercise that discretion in light of "Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); Foman v. Davis, 371 U.S. 178, 182 (1962) (finding "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion"). The United States Court of Appeals for the Third Circuit has interpreted that mandate as requiring that the District Court grant leave to amend in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive. Grayson v. Mayview State Hosp., 293 F.3d 103, 107-08 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F. 3d 196, 204 (3d Cir. 2006)

(stating that, generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

Defendants do not argue that Plaintiffs unduly delayed seeking amendment, that Plaintiffs' proposed amendment would cause any unfair prejudice, or that Plaintiffs are acting in bad faith. The Court will therefore focus its analysis on Defendants' futility argument.

b. **Futility Analysis**

A proposed amendment "is futile if the amended complaint would not survive a motion to dismiss." County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11-7119 (WJM), 2014 U.S. Dist. LEXIS 46572, *9-10 (D.N.J. Apr. 4, 2014); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997); Allah v. Bartkowski, No. 11-3153(MAS), 2017 U.S. Dist. LEXIS 74826, *6 (D. N.J. May, 17 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court notes that Defendants bear the burden of establishing that Plaintiffs' proposed amendment is futile, and that, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one. Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp.

2d 761, 764 (D.N.J. 2000); accord Marjam, 2014 U.S. Dist. LEXIS 46572 at *10. "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper.'" Schiano v. MBNA, No. 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440, *44 (D.N.J. Feb. 11, 2013) (quoting 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487 (3d ed. 2012)). The Court will evaluate each of Plaintiffs' proposed causes of action under these standards.

### i. Plaintiffs' Constitutional Claims (Counts I, II and III)

As noted above, Plaintiffs have asserted a claim under 42 U.S.C. § 1983 in connection with Defendants' alleged violation of Plaintiffs' rights under the First Amendment to the United States Constitution. (Prop. 6th Am. Compl. ¶¶ 2398-2406). Plaintiffs also seek relief for Defendants' alleged violations of their rights under the state constitutions of both New Jersey and New York. (Id. ¶¶ 2407-2424). Plaintiffs premise all of their constitutional claims on the same general pattern of conduct: the Port Authority's practice of promoting officers to the rank of Sergeant of the Port Authority Police Department based on those officers' political affiliations, associations and patronage. (See, e.g., id. ¶¶ 2400, 2409, 2418). Plaintiffs allege that the Port Authority violated their constitutional rights when it declined to promote them based on its belief that Plaintiffs were not sufficiently supportive of its "preferred" groups and political candidates. (See, e.g., id. ¶¶ 120-124, 2399-2406).

In Turano, which concerns the Port Authority's 2015 promotional examination for the rank of Sergeant, Judge Salas evaluated the plaintiffs' political patronage claims using the test that the United States Court of Appeals for the Third Circuit discussed in Galli v. NJ Meadowlands Comm'n, 490 F.3d 265, 271 (3d. Cir. 2007). (See March 31, 2017 Opinion, ECF No. 21 in Turano). As Judge Salas noted, in Galli, the Court of Appeals explained that a plaintiff asserting a discrimination claim based on political patronage in violation of the First Amendment must

establish: "(i) [he] was employed at a public agency in a position that does not require political affiliation; (ii) [he] engaged in constitutionally protected conduct; and (iii) this conduct was a substantial or motivating factor in the [public employer's] employment decision." (Id. at 11 (citing Galli, 490 F.3d at 271) (brackets in original).

With regard to the first factor of the Galli test, and examining essentially the same factual allegations at issue here, Judge Salas expressly found that "the position of Port Authority police sergeant does not require political affiliation." (Id.).[3] This Court adopts Judge Salas's finding, as well as Her Honor's underlying rationale, (id. at 11-12), here. Therefore, as in Turano, Plaintiffs here "have sufficiently pleaded the first element of a prima facie political patronage discrimination claim." (Id. at 12).

With regard to the second factor, which examines whether Plaintiffs have sufficiently alleged that they have engaged in constitutionally protected conduct, Judge Salas's legal discussion in Turano is likewise instructive. As Judge Salas noted, "the First Amendment protects employees from adverse employment action premised on their non-affiliation with political groups." (Id. (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 65-66, 76 (1990); Elrod v. Burns, 427 U.S. 347, 350-51, 371-72 (1976)). Judge Salas further observed that, "under this line of cases, 'there is no requirement that dismissed employees prove that they, or other employees, have been coerced into changing, either actually or ostensibly, their political allegiance.'" (Id. at 13 (citing Branti v. Finkel, 445 U.S. 507, 517 (1980)). Indeed, "the Third Circuit has held that a political patronage discrimination claim can arise out of an employee's 'failure to support the winning candidate' or 'failure to engage in any political activity whatsoever.'" (Id. (citing Galli, 490 F.3d at 272-73)).

---

[3] Indeed, Defendants do not contest this point in their opposition. (See generally Def. Br., ECF No. 146).

7

Interpreting the relevant case law, however, Judge Salas found that "Plaintiffs must still allege sufficient factual material that—taken as true—supports the inference that their political non-affiliation amounts to constitutionally protected conduct." (Id.). Therefore, while Plaintiffs need not allege that they engaged in any affirmative speech or other conduct, "they must at least allege that they chose not to support some of the 'preferred political groups' or that they chose to avoid political activity altogether." (Id.). "In other words, Plaintiffs cannot establish that they engaged in conduct protected by the First Amendment solely by identifying the political associations of other individuals who were promoted." (Id.).

That is, for the most part, what Plaintiffs have done in their Prop. 6th Am. Compl. It appears that, for each officer promoted to Sergeant, Plaintiffs have endeavored to identify any potential connection to a politician or group, no matter how tenuous or ill-defined, and have labeled those persons and groups as the Port Authority's "preferred" candidates and organizations. (Prop. 6th Am. Compl. ¶¶ 127-144). Plaintiffs have identified 17 specific situations describing the Port Authority's alleged political preferences. The Court notes that, of those 17, 10 situations concern promoted officers whose <u>relatives</u> either work for/used to work for a politician, are/were politicians themselves, are/were police officers, or have/had some other position of potential influence. (Id. ¶¶ 127, 129, 132-35, 128-40, 144). Though Plaintiffs do not plead it explicitly, the Court will infer that the promoted officers themselves supported those politicians and groups. Another situation Plaintiffs have identified involves vague "ties to" the Lieutenant's Benevolent Association, and two more concern unclear "associat[ions] with" a sitting United States Senator and the "Bi-State Coalition" fraternal organization, respectively. (Id. ¶¶ 130, 137, 143). One promoted officer was "friends" with a sitting New Jersey State Senator, (id. ¶ 131), one was the president of "an organization for Jewish police officers", (id. ¶ 136), and others were "[m]embers of the Asian Jade

Society", (id. ¶ 142), a race-based "Intra-Port Authority societ[y]." (Id. ¶ 148). Finally, Plaintiffs allege that "[a] disproportionate number of PBA delegates were promoted." (Id. ¶ 141). Plaintiffs also allege, generally, that none of them were affiliated with or perceived as sufficiently supportive of these preferred candidates and groups. (See, e.g., id. ¶¶ 120-122).[4] In any event, the Court notes that, in opposing Plaintiffs' motion for leave to amend, Defendants have not made any argument regarding whether Plaintiffs have sufficiently pled that they engaged in constitutionally protected activity. (See generally Def. Br., ECF No. 146). Defendants focus instead on the third and final prong of the Galli test. (Id. at 2-7). As Defendants bear the burden of establishing that Plaintiffs' proposed amendment would be futile, the Court will concentrate its analysis on that final prong.

The third step of the Galli test for political patronage discrimination requires a plaintiff to establish that his or her constitutionally protected activity was "a substantial or motivating factor" in the challenged employment decision. Galli, 490 F.3d at 271. As Judge Salas explained when analyzing this issue in Turano, "[t]o establish that protected conduct (i.e., non-affiliation) was a substantial or motivating factor in an adverse employment decision, a plaintiff must allege facts sufficient to demonstrate (i) that the employer *knew* of the plaintiff's political persuasion and (ii)

---

[4] These allegations regarding Plaintiffs' participation and support are inherently suspect, as one of the preferred groups in question appears to be "police officers", generally, (id. ¶¶ 133, 135, 138-40) (stating that certain promoted officers have family members who are current or retired officers), and every Plaintiff is a police officer. Likewise, while Plaintiffs appear to suggest that the Police Benevolent Association is another of the Port Authority's preferred groups, at least one Plaintiff was a PBA delegate. (Id. ¶ 2170). Plaintiffs' efforts to depict such an extensive network of "preferred" groups blurs the line, in many instances, as to the parameters of those groups. For instance, are Plaintiffs alleging that the PBA itself is a "preferred group", or is the Port Authority's preference limited to its own PBA delegates? What group is at issue when Plaintiffs refer to promoted officers who are related to other police officers? If Plaintiffs are unable to clearly define the Port Authority's "preferred" groups, Plaintiffs cannot possibly plead, in good faith, that they did not belong to or support any of them.

9

that this knowledge *caused* the adverse employment decision." (Id. at 14 (citing Galli, 490 F.3d at 275) (emphases in original)). Here, Plaintiffs have not alleged any specific facts regarding Defendants' knowledge of any individual Plaintiff's political / apolitical persuasion. Instead, Plaintiffs allege, in conclusory terms, that Defendants either knew or perceived each of the Plaintiffs as either being apolitical or not sufficiently supportive of the Port Authority's expansive network of preferred political candidates and organizations. (See Prop. 6th Am. Compl. ¶ 120-22, ECF No. 145-5). Nevertheless, Defendants do not contend that Plaintiffs have failed to satisfy the "knowledge" component of the third Galli factor, and instead argue that Plaintiffs have not sufficiently alleged causation. (Def. Br. at 8-12, ECF No 146). In light of Judge Salas's findings in Turano, this Court agrees.

In Turano, the plaintiffs alleged, in general terms, that "various individuals were promoted based on political connections and/or affiliations with other organizations", (Compl. ¶ 85, ECF No. 1 in Turano), and that the "[d]efendants gave preference in the promotional process to those candidates who supported the preferred political candidates, were associated with preferred political candidates, or belonged to preferred political organizations and/or associations." (Id. ¶¶ 86, 384). The Turano Plaintiffs also identified what they alleged to be the Port Authority's "preferred" groups and organizations. (Id. ¶ 373) (identifying "Intra-Port Authority societies based on religion and race", certain "Intra-Port Authority departments", other police departments and "other groups powerful in New York City"). Evaluating those allegations, Judge Salas determined that "the preferred political groups that Plaintiffs allege are too broad and nebulous to support an inference of an identifiable political preference by Defendants." (See March 31, 2017 Opinion at 15, ECF No. 21 in Turano). Her Honor therefore found that the Turano plaintiffs "failed to sufficiently plead the third prong of a prima facie political patronage discrimination claim – that

their conduct was a substantial or motivating factor in Defendants' decision not to promote them." (Id.). Here, Plaintiffs' relevant allegations are nearly identical. Plaintiffs repeatedly allege that Defendants made promotions "based on the political affiliations, associations and patronage of Port Authority officers." (Prop. 6th Am. Compl. ¶¶ 2387, 2393, 2400, 2409, 2418). When identifying the candidates, groups and organizations that the Port Authority allegedly "preferred", Plaintiffs describe a broad network that is even more expansive and nebulous than that at issue in Turano. For instance, Plaintiffs allege that the Port Authority "prefers" both democrat and republican politicians from various levels of federal, state and local government, as well as religious, race based, and secular organizations of various types, and a group that appears to be best defined as "current or former police officers." (See, e.g., id. ¶¶ 127-144, 2387, 2393, 2400, 2409, 2418). For the same reasons that Judge Salas articulated in Turano, the Court finds that Plaintiffs here have failed to sufficiently plead that "their conduct was a substantial or motivating factor in Defendants' decision not to promote them." (See March 31, 2017 Opinion at 15, ECF No. 21 in Turano). With a network of allegedly "preferred" groups that is so large and varied, it does not appear that Plaintiffs will ever be able to do so.

As Plaintiffs have not established that Defendants violated their First Amendment rights, and they have not alleged that Defendants violated any other federal rights in connection with the conduct at issue, Plaintiffs have not set forth a valid claim under 42 U.S.C. § 1983. Plaintiffs' proposed claims under the New Jersey Civil Rights Act and the New York Constitution, which the parties agree are coextensive with and subject to the same analysis as Plaintiffs' § 1983 claim, (Pl. Br. at 10, n. 3, ECF No. 145-4; Def. Br. at 12-14, ECF No 146), are therefore futile as well. The Court **DENIES** Plaintiffs' Motion with regard to Counts I, II and III of Plaintiffs' Prop. 6th Am. Compl.

### ii. Plaintiffs' Fraud Claim (Count IV)

Plaintiffs also allege that Defendants engaged in common law fraud when they "represented that the Sergeant's promotional process would be consistent with the provisions set forth in the promotional announcements." (Prop. 6th Am. Compl. ¶ 2426). Plaintiffs allege that "Defendants knew that this representation was false, and specifically that the promotional process would not be conducted in a manner consistent with the promotional announcements." (Id. ¶¶ 2426).

The United States Court of Appeals for the Third Circuit has observed:

> Under New Jersey law, "proof of common law fraud requires the satisfaction of five elements: [1] a material misrepresentation by the defendant of a presently existing fact or past fact; [2] knowledge or belief by the defendant of its falsity; [3] an intent that the plaintiff rely on the statement; [4] reasonable reliance by the plaintiff; [5] and resulting damages to the plaintiff."

Avaya Inc., RP v. Telecom Labs, Inc., 838 F.3d 354, 388 (3d Cir. 2016) (quoting Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 892 A.2d 1240, 1247 (N.J. 2006)). The Court is mindful that Plaintiffs' proposed fraud claim is "subject to the heightened pleading standard for fraud set forth in Fed. R. Civ. P. 9(b), which states that 'a party must state with particularity the circumstances constituting fraud.'" Hlista v. Safeguard Props., LLC, 649 Fed. App'x 217, 221 (3d Cir. 2016) (internal citations omitted). "[T]o place the defendant on notice of the precise misconduct with which [it is] charged, a plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation, and must allege who made a misrepresentation to whom and the general content of the misrepresentation." Id. (all brackets in original) (internal quotations and citations omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Defendants argue that Plaintiffs' fraud claim fails on multiple grounds. First, Defendants contend that Plaintiffs "do not state who made the representations, what they said, and when they said it." (Def. Br. at 10, ECF No. 146). Second Defendants argue that Plaintiffs have not sufficiently pled either their reliance on Defendants' allegedly false statements or the damages they suffered as a result of that reliance. (Id.).[5]

With regard to Defendants' argument that Plaintiffs failed to provide adequate factual specificity regarding the alleged misstatements at issue, (id. at 10), this Court agrees. First, though Plaintiffs' fraud claim is predicated upon information contained in the Port Authority's promotional announcements, Plaintiffs assert that claim against all five defendants. (Prop. 6th Am. Compl. ¶¶ 2425-2429, ECF No. 145-5). Plaintiffs have not alleged that Defendants Fedorko, Ferrigno, Tagarelli or Brazicki made any of the misrepresentations at issue, and Plaintiffs' fraud claim is therefore facially invalid as to those defendants. Second, Plaintiffs' fraud claim appears to be based primarily on their contention that the Port Authority's promotional announcements implicitly created some general understanding that the Port Authority would conduct the promotional process "in good faith", and that this implicit representation became fraudulent when the Port Authority allegedly promoted certain officers based on their affiliations with certain politicians and groups. (See, e.g., id. ¶¶ 92, 110, 152, 2336). The Court finds that these general

---

[5] Defendants begin their discussion of Plaintiffs' proposed fraud claim by arguing, without elaboration, that the claim fails for the reasons that Judge Salas addressed in Her Honor's previous opinions in Mendez and Turano. Judge Salas dismissed the plaintiffs' fraud claims in those cases after finding that the plaintiffs failed to allege facts sufficient to support an inference that the defendants intended to mislead them. (See March 31, 2017 Opinion at 20-21, ECF No. 41 in Mendez; March 31, 2017 Opinion at 21-22, ECF No. 21 in Turano). Defendants here have not made any arguments regarding intent, focusing instead, as noted above, on the sufficiency of Plaintiffs' allegations regarding the content of Defendants' alleged misstatements, as well as those regarding Plaintiffs' reliance and damages. To the extent Defendants are requesting that the Court analyze Plaintiffs' 247-page Prop. 6th Am. Compl. and construct such arguments sua sponte, the Court declines to do so.

allegations of an implicit promise of "good faith" are far too amorphous to serve as the factual predicate for a fraud claim. Federal Rule of Civil Procedure 9(b) requires more specificity. Plaintiff has, however, also identified certain specific situations in which the Port Authority allegedly represented in its promotional announcements that it would impose certain eligibility restrictions or adhere to a specific procedure, and yet failed to do so. For instance, in connection with the 2010 promotional examination, Plaintiffs allege that the Port Authority failed to completely enforce its stated promotional requirements related to officers with pending disciplinary charges, (id. ¶¶ 93, 161), and unacceptable attendance records, (id. ¶¶ 94, 161),[6] and also failed to ensure that every officer chosen for further consideration was randomly selected from the horizontal roster of officers who had already passed the written test. (Id. ¶ 100-05, 164-65). With regard to the 2015 examination, Plaintiffs allege that the Port Authority misrepresented its intentions regarding the random selection of candidates from the horizontal roster, (id. ¶ 2340-44), and the process for selecting which officers would participate in Qualifications Review Meetings. (Id. ¶¶ 2347-48). The Court will assume, without deciding, that these specific statements regarding eligibility and procedure might constitute "material misrepresentations" sufficient to support a fraud claim under New Jersey Law.

Nevertheless, Plaintiffs have failed to sufficiently allege that they reasonably relied on the Port Authority's alleged misrepresentations, or that they suffered some harm as a result of that reliance. Plaintiffs allege, in conclusory fashion, that they "rightfully relied", (id. ¶ 2428), on the Port Authority's implicit representation that "the Sergeant's promotional process would be consistent with the provisions set forth in the promotional announcements." (Id. ¶ 2426). By the

---

[6] Though Plaintiffs do not specifically allege the source of these requirements, the Court will infer, based on the context of Plaintiffs' related allegations, that the Port Authority set them forth in the initial promotional announcement for the 2010 examination.

14

Court's count, there are 56 Plaintiffs. The Prop. 6th Am. Compl. does not provide any information describing which Plaintiffs relied on which alleged misrepresentations or, in fact, indicate whether any Plaintiff relied on anything other than the general, implicit promise of "good faith" that this Court has found to be insufficient.

Even if the Court were to assume that every Plaintiff relied on every alleged misrepresentation, Plaintiffs do not allege facts demonstrating how they did so. This is interrelated with Plaintiffs' allegations of damages. Plaintiffs allege that they "spen[t] time and money in preparing for the promotional exam", (id. ¶ 2429), but they do not link those damages to Defendants' conduct. Plaintiffs' expenditures may only be properly characterized as damages if Plaintiffs spent time and money preparing for the 2010 and 2015 examinations because of their reliance on the Port Authority's alleged misrepresentations. For instance, if the Port Authority's promotional announcement listed no requirements related to attendance and disciplinary history, and said nothing about the random selection of officers from the horizontal roster, would Plaintiffs have skipped the 2010 examination, thereby saving that time and money? Similarly, would Plaintiffs have forgone taking the 2015 examination if the Port Authority's promotional announcement said nothing about the potential for random selection of officers from the horizontal roster or about the Port Authority's process for selecting officers to attend Qualifications Review Meetings? As Plaintiffs have not pled that they would have acted any differently if the Port Authority had not allegedly made the misrepresentations in question, Plaintiffs have not sufficiently pled the damages element of their fraud claim. Moreover, the Court cannot simply infer that the Plaintiffs would have forgone the examinations but-for the Port Authority's statements in light of Plaintiffs' allegations concerning the rarity of the promotional tests and the fact that the 2015 examination likely represents the "last chance for many of the Plaintiffs to be

promoted to Sergeant." (See Prop. 6th Am. Compl. ¶ 2382, ECF No. 145-5). As Plaintiffs have failed to plead facts sufficient to establish a plausible entitlement to relief with regard to their proposed fraud claim, the Court **DENIES** Plaintiffs' motion with regard to Count IV of their Prop. 6th Am. Compl.

### iii. Plaintiffs Kruesi's and Otero's Individual Claims (Counts V and VI)

In Count V of the Prop. 6th Am. Compl., Plaintiff Kruesi asserts a claim under 42 U.S.C. § 1983 for retaliation based on his exercise of his First Amendment rights. (Id. ¶¶ 2430-2437). Kruesi's claim is related to his activity as a PBA delegate and the allegedly retaliatory actions of Port Authority Lieutenant Rick Munnelly, (id. ¶¶ 2149-2208, 2430-2437), and is independent from the First Amendment claims discussed above. In Count VI, Plaintiff Otero brings a claim against Defendants Port Authority and Fedorko for violation of the Americans With Disabilities Act ("ADA"). (Id. ¶¶ 2438-2443). In opposing Plaintiffs' Motion for Leave to File an Amended Complaint, Defendants contend that Plaintiff Kruesi fails to state a viable claim under § 1983, (Def. Br. at 16-18, ECF No. 146), but do not challenge Plaintiff Otero's ADA claim. (See generally id.). The Court notes that Plaintiffs are not actually seeking amendment of either claim, as Plaintiffs' relevant allegations are identical to those set forth in the previous iteration of their pleading. (Compare 5th Am. Compl., ¶¶ 288-300, 2138-2197, 2424-2437 with Prop. 6th Am. Compl. ¶¶ 299-341, 2148-2208, 2430-2443). Neither Count V nor Count VI is therefore properly before this Court in the context of Plaintiffs' Motion.

### iv. Withdrawal of Certain Claims

In addition to seeking to fortify their common law fraud and political patronage-based discrimination claims, Plaintiffs also seek the Court's leave to withdraw their claims for action in lieu of prerogative writs and estoppel (Counts II and VI in Plaintiffs' 5th Am. Compl.). Defendants

do not challenge this aspect of Plaintiffs' proposed amendment, nor does it seem they would have any legitimate basis for doing so. The Court **GRANTS** Plaintiffs' motion to the extent Plaintiffs seek to withdraw their claims for action in lieu of prerogative writs and estoppel.

**CONCLUSION**

Based on the foregoing, Plaintiffs' Motion for Leave to File an Amended Complaint, (ECF No. 145), is **GRANTED IN PART AND DENIED IN PART**. An appropriate form of Order accompanies this Opinion.

JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Esther Salas, U.S.D.J.