**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SHARON OTERO, et al.,** | : |
| **Plaintiffs,** | : Civil Action No. 14-1655 (ES) (JAD) |
| **v.** | : OPINION |
| **PORT AUTHORITY OF NEW YORK AND NEW JERSEY, et al.,** | : |
| **Defendants.** | : |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiffs' appeal (D.E. No. 152) of United States Magistrate Judge Joseph A. Dickson's (the "Magistrate Judge") December 18, 2017 Opinion (D.E. No. 150, "Opinion") and Order (D.E. No. 151) (collectively, the "December 18 Decision") denying in part their motion for leave to file a Sixth Amended Complaint (D.E. No. 145). The Court has considered both parties' submissions and decides this appeal without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons below, the Court AFFIRMS the December 18 Decision.

## I.    Background

The case generally concerns Defendant Port Authority of New York and New Jersey's (the "Port Authority") promotion of certain police officers to sergeant in connection with 2010 and 2015 promotional examinations. (*See generally* D.E. No. 111 ("5th Am. Compl.")); *see also generally Mendez v. Port Auth. of N.Y. & N.J.*, No. 14-7543 (ES) (JAD) ("*Mendez*"); *Turano v. Port Auth. of N.Y. & N.J.*, No. 16-2578 (ES) (JAD) ("*Turano*")). Because the Magistrate Judge

has detailed the relevant facts in his Opinion (*see* D.E. 150 at 1-3), the Court provides background summarily.

Plaintiffs' Fifth Amended Complaint—the operative complaint—asserts eight claims: a 42 U.S.C. § 1983 claim alleging Defendants violated Plaintiffs' First Amendment rights (Count I); an action in lieu of prerogative writs per New Jersey Rule of Court 4:69 (Count II); a New Jersey Civil Rights Act ("NJCRA") claim alleging Defendants violated Plaintiffs' rights under the New Jersey Constitution (Count III); a claim alleging Defendants violated Plaintiffs' rights under the New York Constitution (Count IV); a fraud claim (Count V); an estoppel claim (Count VI); a 42 U.S.C. § 1983 claim alleging Defendant Port Authority violated Plaintiff Kruesi's First Amendment rights (Count VII); and a claim by Plaintiff Otero alleging Defendants Port Authority and Fedorko violated the Americans with Disabilities Act ("ADA") (Count VIII). (5th Am. Compl. ¶¶ 2380-2437).

Plaintiffs sought leave to file a sixth amended complaint. (D.E. No. 145). The proposed Sixth Amended Complaint (hereinafter, "the Proposed Complaint") (D.E. No. 145-5, Ex. A ("Proposed 6th Am. Compl.")) withdrew Plaintiffs' claims for an action in lieu of prerogative writs (Count II) and for estoppel (Count VI), and it also added or modified 31 paragraphs containing factual allegations. (*Compare* 5th Am. Compl., *with* Proposed 6th Am. Compl.). On December 18, 2017, Magistrate Judge Dickson granted Plaintiffs leave to withdraw Counts II and VI, but otherwise denied Plaintiffs leave to amend because of futility. (D.E. Nos. 150 & 151). Plaintiffs appeal the December 18 Decision. (D.E. No. 152).

## II.     Legal Standards

### A.     Review of Magistrate Judge Decisions

A magistrate judge may hear and determine any non-dispositive pretrial matter before the court. *See* 28 U.S.C. § 636(b)(1)(A). Section 636(b)(1)(A) provides, however, that a district judge "may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."[1] Similarly, Federal Rule of Civil Procedure 72(a) provides that, for non-dispositive matters, the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See also* L. Civ. R. 72.1(c)(1)(A).

The district judge "is bound by the clearly erroneous rule in reviewing questions of fact." *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). "A finding is considered 'clearly erroneous' when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, No. 12-3289, 2014 WL 1494592, at *7 (D.N.J. Apr. 16, 2014) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). By contrast, "the phrase 'contrary to law' indicates plenary review as to matters of law." *Haines*, 975 F.2d at 91. "A decision is considered contrary to law if the magistrate judge has 'misinterpreted or misapplied applicable law.'" *Merck Sharp & Dohme*, 2014 WL 1494592, at *7 (quoting *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006)).

Finally, "[t]he burden is on the party filing the notice of appeal to demonstrate that the magistrate judge's decision was clearly erroneous or contrary to law." *McDonough v. Horizon*

---

[1]     Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

- 3 -

*Blue Cross Blue Shield of N.J., Inc.*, No. 09-0571, 2013 WL 322595, at *2 (D.N.J. Jan. 22, 2013).

### B. Motions for Leave to Amend Under Rule 15

"[L]eave to amend is a matter committed to the sound discretion of the district court." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). However, a district court must exercise such discretion within Federal Rule of Civil Procedure 15(a)'s mandate "that amendments are to be granted freely in the interests of justice." *Voilas v. Gen. Motors Corp.*, 173 F.R.D. 389, 395-96 (D.N.J. 1997). A district court therefore must grant leave to amend "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Regarding futility, "[a]n amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). Hence, courts analyze futility under the same standard as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."). And "to survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.  Analysis

Plaintiffs base their appeal upon the following arguments: (i) the December 18 Decision was dispositive, and the Magistrate Judge was not entitled to render such a decision; (ii) the Magistrate Judge erred in holding their proposed political patronage discrimination claims futile; and (iii) the Magistrate Judge erred in holding their proposed fraud claim futile.  (*See generally* D.E. No. 152-4, Plaintiffs' Brief in Support of Their Appeal of the Honorable Joseph A. Dickson's December 18, 2017 Order and Opinion ("Pl. Moving Br."); D.E. No. 156, Plaintiffs' Reply Brief to Defendants' Opposition to Plaintiffs' Appeal of Judge Dickson's Opinion ("Pl. Reply Br.")).  The Court will address each argument in turn.

### A.  The Propriety of a Magistrate Judge Denying Leave to Amend Because of Futility

As stated above, a magistrate judge may hear and determine any non-dispositive pretrial matter before the court.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  A magistrate judge may also hear dispositive motions and issue to the district court judge a "report and recommendation" that includes proposed findings of fact and recommendations on how to rule on the motion.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a).

Plaintiffs argue on appeal that the December 18 Decision was improper because it was "effectively dispositive," and magistrate judges may not determine such matters under 28 U.S.C. § 636(b)(1)(A).  (Pl. Moving Br. at 3).  Plaintiffs appear to argue that because courts analyze an amended complaint for futility under the same standard as a Rule 12(b)(6) motion to dismiss, and because a Rule 12(b)(6) motion to dismiss is dispositive, it must follow that denying a motion to amend based on a finding of futility is dispositive.  (*See id.* at 4).

The Court disagrees.  Motions to amend are non-dispositive.  *Ford Motor Co. v. Edgewood Props.*, No. 06-1278, 2011 WL 1599609, at *2 n.3 (D.N.J. Apr. 27, 2011) ("Motions

to amend pleadings are considered non-dispositive.").  Courts in this District have consistently rejected arguments to the contrary, including Plaintiffs' argument that denying a motion to amend because of futility is "effectively dispositive."  *See Falzo v. Cty. of Essex*, No. 03-1922, 2005 WL 2129927, at *2 (D.N.J. Aug. 31, 2005) (rejecting the defendants' argument that the magistrate judge's decision to deny their motion to file counterclaims was "effectively dispositive" because the magistrate judge held the proposed counterclaims futile); *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 315 n.5 (D.N.J. 2009) (rejecting the notion that a motion to amend denied as futile should be reviewed under a de novo standard, rather than under the clearly erroneous or contrary to law standard); *Miller v. Beneficial Mgmt. Corp.*, 844 F. Supp. 990, 1001 (D.N.J. 1993) ("A determination as to futility [of amendment] does not require a *conclusive* determination on the merits of a claim or defense."); *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990) ("[Analyzing futility of amendment] does not require the parties to engage in the equivalent of substantive motion practice upon the proposed new claim or defense; [it] does require, however, that the newly asserted [claim or] defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit."); *see also Am. Fire & Cas. Co. v. Material Handling Supply, Inc.*, No. 06-1545, 2007 WL 2416434, at *1-2 (D.N.J. Aug. 16, 2007) (applying a clearly erroneous or contrary to law standard in an appeal of a magistrate judge decision denying defendant leave to implead a third-party defendant based on futility of impleader).

Accordingly, the Court finds nothing improper in the Magistrate Judge rendering a decision on Plaintiffs' motion to amend, rather than issuing a report and recommendation, and the Court will review the December 18 Decision under the clearly erroneous or contrary to law standard.

## B.     Plaintiffs' Political Patronage Discrimination Claims

Plaintiffs' Proposed Complaint contains a 42 U.S.C. § 1983 claim (Count I) alleging that Defendants violated their First Amendment rights by promoting officers to the rank of sergeant based on those officers' political affiliations, associations, and patronage—to the exclusion of Plaintiffs, who Defendants perceived as either apolitical or insufficiently supportive of the preferred political candidates or organizations.  (Proposed 6th Am. Compl. ¶¶ 119-124 & 2398-2406).  Plaintiffs' Proposed Complaint also contains claims alleging that Defendants violated their rights under the New Jersey and New York state constitutions (Counts II & III, respectively).  (*Id.* at ¶¶ 2407-2424).  The parties agree that these state law constitutional claims are coextensive with and subject to the same analysis as Plaintiffs' proposed § 1983 claim.  (*See* Pl. Moving Br. at 15 n.5; D.E. No. 155, Defendants' Memorandum of Law in Opposition to Plaintiffs' Appeal of Judge Dickson's Opinion ("Def. Opp'n Br.") at 10-12).

To obtain relief under 42 U.S.C. § 1983, Plaintiffs must establish that a person acting under color of state law deprived them of a federal right.  42 U.S.C. § 1983; *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000).  Generally, the First Amendment prohibits public employers from taking adverse action against an employee because of an employee's actual or perceived engagement in constitutionally protected political activity.  *See Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1419 (2016) ("When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983.").  To sustain a First Amendment retaliation claim, a plaintiff must establish that "(i) he engaged in activity protected by the First Amendment;[2] (ii) [the] defendants

---

[2]     A court determines as a matter of law whether activity is protected by the First Amendment.  *Baldassare v. New Jersey*, 250 F.3d 188, 194-95 (3d Cir. 2001).  In making this determination, a court first considers if the speech

retaliated in response; and (iii) [the] defendants could not rebut the claim by demonstrating that they would have taken the same action even in the absence of the protected speech." *Ober v. Brown*, 105 F. App'x 345, 346-47 (3d Cir. 2004) (citing *Baldassare v. New Jersey*, 250 F.3d 188, 194-95 (3d Cir. 2001)).

Relevant here, courts have also developed a three-part test for a plaintiff to establish a prima facie claim of discrimination based on political patronage in violation of the First Amendment: a plaintiff must show that "(i) [he] was employed at a public agency in a position that does not require political affiliation; (ii) [he] engaged in constitutionally protected conduct; and (iii) this conduct was a substantial or motivating factor in the [public employer's] employment decision." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). To prove the third *Galli* element, a plaintiff must allege facts sufficient to show (i) that the employer *knew* of the plaintiff's political persuasion and (ii) that this knowledge *caused* the adverse employment decision. *Id.* at 275-76. Finally, if a plaintiff establishes this prima facie claim, the public employer may "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Id.* at 271.

The Magistrate Judge applied the *Galli* test and held that Plaintiffs' Proposed Complaint did not contain a viable political patronage discrimination claim. (Opinion at 6-11). Regarding the first *Galli* element, the Magistrate Judge adopted this Court's reasoning in *Turano* and found that the position of Port Authority police sergeant does not require political affiliation. (*Id.* at 7).

---

in question involves a matter of public concern. *Id.* "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Id.* If a court determines that the speech involves a matter of public concern, it next considers whether plaintiff's "interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." *Id.* (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

On the second *Galli* element, the Magistrate Judge expressed doubts about whether Plaintiffs adequately pleaded that they engaged in protected conduct. (*Id.* at 7-9). The Magistrate Judge reasoned that the alleged politically preferred groups are so numerous and ill defined that it raised the question of whether Plaintiffs themselves belonged to or supported some of the preferred groups. (*See id.*). Nevertheless, the Magistrate Judge appears to have determined futility solely on the Plaintiffs' failure to adequately plead the third *Galli* element, specifically Plaintiffs' failure to adequately plead causation.[3] (*See id.* at 9-11).

In holding that Plaintiffs had not sufficiently alleged causation, the Magistrate Judge analogized the facts to those in, and adopted the reasoning of, this Court's March 31, 2017 decision in *Turano*. (*See id.* at 2 & 10-11). The Magistrate Judge held that "the preferred political groups that Plaintiffs allege," like in *Turano*, "are too broad and nebulous to support an inference of an identifiable political preference by Defendants." (*Id.*). Indeed, the Magistrate Judge found the allegedly preferred groups described by Plaintiffs were "even more expansive and nebulous than that at issue in *Turano*." (*Id.* at 11). In support, the Magistrate Judge observed that the allegedly preferred groups encompass "both democrat and republican politicians from various levels of federal, state and local government, as well as religious, race based, and secular organizations of various types, and a group that appears to be best defined as

---

[3]  The parties appear to disagree on whether the Magistrate Judge's futility finding was based in part on the second *Galli* factor. (*See* Pl. Moving Br. at 9-10 ("[T]he entire futility argument rested *not* on whether [P]laintiffs engaged in protected activity, but rather whether said activity was a motivating factor in the employment decision. . . . Thus, the only element at issue is whether Plaintiffs' non-affiliation—which the Court already accepted as constitutionally protected—caused the Plaintiffs to not be promoted.") (emphasis in original); Def. Opp'n Br. at 4-6 (arguing the Plaintiffs cannot establish that they engaged in constitutionally protected conduct and concluding that the Magistrate Judge "properly denied plaintiffs' motion to amend the complaint")). For this appeal, the Court will assume Plaintiffs' characterization of the December 18 Decision is correct—i.e., the Magistrate Judge's statements on the second *Galli* factor were dicta. Although the evidence is not entirely in Plaintiffs' favor, the Court finds Plaintiffs' interpretation reasonable. (*See* Opinion at 9 ("In any event, the Court notes that, in opposing Plaintiffs' motion for leave to amend, Defendants have not made any argument regarding whether Plaintiffs have sufficiently pled that they engaged in constitutionally protected activity. . . . Defendants focus instead on the third and final prong of the *Galli* test. . . . As Defendants bear the burden of establishing that Plaintiffs' proposed amendment would be futile, the Court will concentrate its analysis on that final prong.")). Accordingly, this Court will assume Plaintiffs' speech was constitutionally protected and will not address Defendants' arguments otherwise.

current or former police officers." (*Id.*). The Magistrate Judge concluded by stating that the "allegedly preferred groups are so large and varied," Plaintiffs might not ever be able to plead sufficiently that "their conduct was a substantial or motivating factor in Defendants' decision not to promote them." (*Id.*).

Plaintiffs contend that free speech protects an individual's right *not* to speak politically and *not* to associate with the political speech of others. (Pl. Moving Br. at 12-15; Pl. Reply Br. 3-4). Plaintiffs argue that the Magistrate Judge erred because the Proposed Complaint contains ample evidence, for purposes of a 12(b)(6) motion, to infer that Plaintiffs' *general* political non-affiliation was a substantial or motivating factor in Defendants' decision not to promote them. (*See* Pl. Moving Br. at 10-12; Pl. Reply Br. 2-6). As support, Plaintiffs provide the following text from the Proposed Complaint:

> 119. Defendants gave preference in the promotional process to those candidates who supported the preferred political candidates, were associated with preferred political candidates, or belonged to preferred political organizations and/or associations. That included but was not limited to associations with a former governor of New York, a New Jersey senator, state senators, local New Jersey mayors, heads of local civil organizations, politically-appointed members of the Port Authority Board of Commissioners, other individuals politically appointed in New York and New Jersey, unions, and other quasi-political organizations, as well as race and religious based organizations.
>
> 120. As a direct result, Plaintiffs were not promoted, since none of the Plaintiffs were politically affiliated or perceived as such.
>
> 121. Plaintiffs were actually and/or were perceived as being apolitical and/or not sufficiently supportive of the preferred political candidates and/or organizations.
>
> 122. Plaintiffs were perceived by the Defendants as not supporting and/or not being sufficiently supportive of favored political candidates and organizations.
>
> 123. Defendants based promotional decisions in part on whether candidates were sufficiently supportive of favored political

candidates and/or political organizations. Whether an officer was sufficiently supportive was a motivating factor in making promotions.

124. The preference given to those who supported and/or were perceived as supporting the aforementioned political candidates directly caused the promotion of certain candidates over others, including plaintiffs.

(Pl. Moving Br. at 11-12 (citing Proposed 6th Am. Compl. ¶¶ 119-124)).[4]

Defendants counter that the Magistrate Judge did not err in holding that Plaintiffs had not sufficiently alleged causation. (Def. Opp'n Br. 6-10). Defendants accuse Plaintiffs of "plumb[ing] through the promoted officers' personal backgrounds for any arguable political connection or association" to support their political patronage discrimination claims. (*Id.* at 7). Defendants note the extensive document discovery which has been completed and argue that Plaintiffs still have not established a "common thread to these people or groups that allows the Court to conclude individuals associated with them were promoted because of political patronage." (*Id.* at 7-8). In essence, Defendants argue that "there can be no [political] favoritism when every type of association is the favorite." (*Id.* at 9).

The Court agrees with Defendant and will affirm the Magistrate Judge's holding that Plaintiffs' political patronage discrimination claims are futile. First, the *only* text Plaintiffs cite from the Proposed Complaint to support their argument on appeal are "[t]hreadbare recitals of the [third *Galli*] element[]." *See Iqbal*, 556 U.S. at 678; (Pl. Moving Br. at 10-12 (citing Proposed 6th Am. Compl. ¶¶ 119-124) ("Defendants gave preference . . . to those candidates who supported [or] were associated with preferred political candidates, or belonged to preferred political organizations and/or associations . . . . As a direct result, Plaintiffs were not promoted,

---

[4]     Plaintiffs also cite to Paragraphs 150, 152, 155, and 159 in support. (*See* Pl. Moving Br. at 11-12). But these paragraphs are substantively identical to Paragraphs 119 to 124. (*Compare* Proposed 6th Am. Compl. ¶¶ 119-124, *with id.* ¶¶ 150, 152, 155 & 159).

since none of the Plaintiffs were politically affiliated or perceived as such. . . . Defendants based promotional decisions in part on whether candidates were sufficiently supportive of favored political candidates and/or political organizations. Whether an officer was sufficiently supportive was a motivating factor in making promotions. . . . The preference given to those who supported and/or were perceived as supporting the aforementioned political candidates directly caused the promotion of certain candidates over others, including plaintiffs.")). In other words, the text Plaintiffs cite simply states that their political non-affiliation was the cause or a motivating factor for Defendants not promoting them. (*See* Pl. Moving Br. at 10-12 (citing Proposed 6th Am. Compl. ¶¶ 119-124)). The cited text does not contain a single *factual* allegation for the Court to reasonably infer Plaintiffs' legal conclusion that the third *Galli* element is met. (*See* Pl. Moving Br. at (citing Proposed 6th Am. Compl. ¶¶ 119-124)). And without a factual allegation to support that legal conclusion, the political patronage claims cannot survive a 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S. at 678-79 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Consequently, Plaintiffs have not substantiated their argument that their claims are not futile. Based on this finding alone, the Court can affirm the Magistrate Judge's decision, as the burden is on the party seeking appeal to point out how the Magistrate Judge erred. *See McDonough*, 2013 WL 322595, at *2 ("The burden is on the party filing the notice of appeal to demonstrate that the magistrate judge's decision was clearly erroneous or contrary to law.").

Nevertheless, the Court has examined the factual allegations from the Proposed Complaint that the Magistrate Judge utilized in his analysis of the third *Galli* prong. The Court

finds that the Magistrate Judge did not clearly err, and did not misinterpret or misapply the law, in holding that Plaintiffs did not sufficiently allege causation.

In support of his holding, the Magistrate Judge considered the following factual allegations from the Proposed Complaint as relevant to causation:

> 127.  For example, Kevin Gormley's wife works for Congressman Peter King.
>
> 128.  Luis Mancuso has ties to Lt. Macaluso, the treasurer of the Lieutenant's Benevolent Association (LBA), and Jeff Baumbeck, who is the head of the LBA[.]
>
> 129.  Keith Kostonoski's wife worked for former Governor Pataki.
>
> 130.  Arelys Matos was associated with NJ Senator Menendez[.]
>
> 131.  Leticia Perez is friends with NJ State Senator M. Teresa Ruiz.
>
> 132.  Daniel McCabe's family owns McCabe Ambulance Service, which does business with various local municipalities and law enforcement agencies.
>
> 133.  Robert Zafonte's father was a retired NYPD officer, was president of the East Meadow Civic and Community Service Organization, and chief investigator for the Town of Hempstead, and is otherwise connected with the Nassau County Republican Party.  Further, Robert Zafonte, was only promoted after he contacted high ranking officers in PAPD, in an improper effort to be promoted.
>
> 134.  Richardo Kuncken is the son of Dian Kuncken, mayor of Stanhope, NJ.
>
> 135.  Michael Kennedy is the son of Thomas Kennedy, retired police office and Hoboken councilman.
>
> 136.  Scot Pomerantz is the president of the Shomrim Society, an organization for Jewish police officers.  Moreover, Scot Pomerantz contacted a member of the Board of Commissioners of the Port Authority in order to be promoted.
>
> 137.  Sergeants Woody and Harrison are associated with the "Bistate Coalition" fraternal organization.

138.   Sean Dale's father is a retired NYPD chief and former commissioner of the Nassau County Police Dept.

139.   James Flanigan's father[-]in[-]law is retired PAPD Lt. William Corrigan; Flanigan's wife is a police officer with the NJ Regional Operational Intel. Center[;] and Flanigan's brother-in-law is a police officer who is a driver at police headquarters.

140.   Brian Boel's father-in-law was the Chief of North Bergen Police Department.   As set forth in response #1, Boel has made comments to various officers that "hooks" got him promoted, "just like everyone else."

141.   A disproportionate number of PBA delegates were promoted. This includes but is not limited to Jordon Esposito, John Garrone, John Rice, Pat Monihan, Mike Scivetti, and Ray Butler.

142.   Members of the Asian Jade Society were promoted due to their association with said organization.

143.   Members of the Bi State Coalition, such as President Aaron Woody and Lance Harris, were promoted due to their association with said organization.

144.   Lisa Orlando is the niece of Frank Orlando, the head of the NYS insurance fraud division.

(Opinion at 11; *see also* Proposed 6th Am. Compl. ¶¶ 127-144).   The Magistrate Judge found

that the allegedly preferred groups encompass "both democrat and republican politicians from

various levels of federal, state and local government, as well as religious, race-based, and secular

organizations of various types, and a group that appears to be best defined as current or former

police officers."   (Opinion at 11).   From this, the Magistrate Judge held that the preferred

political groups that Plaintiffs allege are too broad and nebulous to support an inference of an

identifiable political preference by Defendants.   (*Id.* at 10-11).

The Magistrate Judge's reasoning and application of the law is sound.   For Plaintiffs'

political patronage claims to survive a 12(b)(6) motion to dismiss, their Proposed Complaint

"must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."

- 14 -

*See Iqbal*, 556 U.S. at 678. And for those political patronage claims to possess "facial plausibility," Plaintiffs must "plead[] factual content that allows the [C]ourt to draw the *reasonable inference* that [D]efendant[s']" failure to promote Plaintiffs was caused by Plaintiffs' political non-affiliation. *See id.*

Plaintiffs have not done so. "[D]rawing on . . . judicial experience and common sense," this Court concludes that there is no such reasonable inference where the allegedly preferred groups include: both Republican and Democratic politicians at various levels of both state and federal government; race-based organizations; religion-based organizations; and a myriad of secular associations best defined as groups of current or former police officers. *See id.* at 679; (Proposed 6th Am. Compl. ¶¶ 127-144). As Defendants correctly argue, because these groups are so enormously varied, "there is no common thread" that allows the Court to reasonably infer the individuals associated with them were promoted *because of* political patronage and Plaintiffs were not promoted *because of* their political non-affiliation. (*See* Def. Opp'n Br. 7-8). That common thread is required to move Plaintiffs' political patronage claims from being "a sheer possibility" to being "plausible on [their] face." *See Iqbal*, at 678.

Further undermining the opportunity to reasonably infer causation are the promoted individuals' tenuous connections to the allegedly preferred groups. (*See* Proposed 6th Am. Compl. ¶¶ 127-144). For example, one promoted individual is married to a former employee of former Governor Pataki. (*Id.* ¶ 129). One promoted individual's family—not the individual himself—owns an ambulance company that does business with various local municipalities and law enforcement agencies. (*See id.* ¶ 132). Another is the niece of the head of the New York State insurance fraud division. (*See id.* ¶ 144). Vaguely, others "ha[ve] ties to" or "[are] associated with" a particular person or group. (*See id.* ¶¶ 128, 130 & 137). Does Arelys Matos's

"associat[ion] with NJ Senator Menendez" mean that Matos actively supported Senator Menendez in his election? (*See id.* ¶ 130). Or does Matos's "associat[ion] with NJ Senator Menendez" mean that Matos's first cousin, twice removed, was once a neighbor of Senator Menendez? (*See id.*) The answer is unclear, despite Plaintiffs' *seven* attempts at writing a complaint. What is clear, however, is Plaintiffs have provided no legal support for the proposition that any connection—no matter how indirect—the promoted individuals may have to any group—whether political or non-political—translates into a reasonable inference that Defendants promoted them because of those connections, in violation of the First Amendment. (*See generally* Pl. Moving Br.; Pl. Reply Br.). As Defendants articulate, "[w]ere that the case, then every promotion could be subject to a First Amendment challenge because nearly everyone knows someone [who exercises their political free speech] or exercises their [own] civic duty to vote." (*See* Def. Opp'n Br. at 5-6). And that consequence is at odds with both Rule 12(b)(6) and First Amendment jurisprudence.

The Court affirms the Magistrate Judge's December 18 Decision on Counts I, II, and III of Plaintiffs' Proposed Complaint.

### C. Plaintiffs' Common Law Fraud Claim

Turning to the final claim at issue on appeal, Plaintiffs in the Proposed Complaint allege that Defendants engaged in common law fraud by representing that "the Sergeant's promotional process would be consistent with the provisions set forth in the promotional announcements." (Proposed 6th Am. Compl. ¶ 2426). Plaintiffs further allege that "Defendants knew that this representation was false, and specifically that the promotional process would not be conducted in a manner consistent with the promotional announcements." (*Id.* ¶ 2427).

A valid claim of common law fraud in New Jersey requires a plaintiff to prove the following five elements:

> [1] a material misrepresentation by the defendant of a presently existing fact or past fact; [2] knowledge or belief by the defendant of its falsity; [3] an intent that the plaintiff rely on the statement; [4] reasonable reliance by the plaintiff; [5] and resulting damages to the plaintiff.

*Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 388 (3d Cir. 2016) (quoting *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1247 (N.J. 2006)).

Additionally, a New Jersey common law fraud claim is "subject to the heightened pleading standard for fraud set forth in Fed. R. Civ. P. 9(b), which states that a party must state with particularity the circumstances constituting fraud." *Hlista v. Safeguard Props., LLC*, 649 F. App'x 217, 221 (3d Cir. 2016). "To place the defendant on notice of the precise misconduct with which [it is] charged, a plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation, and must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* (cleaned up). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Magistrate Judge applied this law and held Plaintiffs' fraud claims futile on several grounds. (Opinion at 12-16). Regarding compliance with the heightened pleading standard, the Magistrate Judge observed that although "Plaintiffs' fraud claim is predicated upon information contained in the Port Authority's promotional announcements, Plaintiffs assert that claim against all five defendants" without "alleg[ing] that Defendants Fedorko, Ferrigno, Tagarelli or Brazicki made any of the representations at issue . . . ." (*Id.* at 13). Based on this observation, the Magistrate Judge held that Plaintiffs' claim with respect to those Defendants was facially invalid.

(*Id.*). The Magistrate Judge also concluded that "Plaintiffs' fraud claim appears to be based primarily on their contention that the Port Authority's promotional announcements implicitly created some general understanding that the Port Authority would conduct the promotional process 'in good faith', and that this implicit representation became fraudulent when the Port Authority allegedly promoted certain officers [from preferred groups]." (*Id.* (citing Proposed 6th Am. Compl. ¶¶ 92, 110, 152 & 2336)). This contention, the Magistrate Judge held, lacked sufficient specificity under Rule 9(b) and was too amorphous to be a factual basis for a material misrepresentation. (*Id.* at 13-14).

Regarding certain alleged representations that *might* constitute material representations (*see id.* at 14 (citing Proposed 6th Am. Compl. ¶¶ 93-94, 100-05, 161, 164-65, 2340-44 & 2347-48)), the Magistrate Judge held that Plaintiffs had not pleaded reasonable reliance or resulting damages sufficiently. (*Id.* at 14). The Magistrate Judge found that the Proposed Complaint did not contain any information describing which alleged misrepresentations each of the 56 Plaintiffs relied on other than the "implicit promise of good faith" found to be insufficient. (*Id.* at 14-15 (citing Proposed 6th Am. Compl. ¶ 2426)). The Magistrate Judge found that the Proposed Complaint provided only a threadbare legal conclusion regarding the reasonableness of Plaintiffs' reliance. (*Id.* (citing Proposed 6th Am. Compl. ¶ 2428)). Finally, the Magistrate Judge found that Plaintiffs had not alleged facts demonstrating how they relied on Defendants' misrepresentations and how their damages resulted from their reliance on Defendants' misrepresentations. (*Id.* at 15-16).

Plaintiffs on appeal cite to a portion of this Court's March 31, 2017 decision in *Turano* finding Plaintiffs' fraud claim deficient because Plaintiffs had not sufficiently alleged Defendants' intention that Plaintiffs rely on the alleged misrepresentation. (Pl. Moving Br. at

16). Plaintiffs then appear to argue that their fraud claim is not futile because they have addressed the pleading deficiencies, as identified in *Turano*, with respect to the third fraud element. (*See id.* at 16-19 (citing Proposed 6th Am. Compl. ¶¶ 105, 110, 152, 157-58, 189, 2336, 2342-44 & 2347-48)). Plaintiffs also argue, without providing pincites to the 247-page Proposed Complaint, that they "have specifically and particularly pled a series of false and misleading claims by the Port Authority . . . ." (*See id.* at 19-20; *see also* Pl. Reply Br. at 6-7).

The Court finds that Plaintiffs have not met their burden on appeal of demonstrating that the Magistrate Judge's decision was clearly erroneous or contrary to law. *See McDonough*, 2013 WL 322595, at *2. Notably, Plaintiffs do not address the specific legal bases the Magistrate Judge utilized in his ruling, namely: (i) Plaintiffs' fraud claim is invalid with respect to Defendants Fedorko, Ferrigno, Tagarelli, and Brazicki because the Proposed Complaint contains no allegations that those Defendants made any of the alleged misrepresentations; (ii) a general, implicit understanding that the promotion process would be conducted in good faith is too amorphous to be a factual basis for a material misrepresentation; (iii) Plaintiffs did not specify which of the misrepresentations each of the 56 Plaintiffs relied upon; (iv) Plaintiffs' allegation regarding the reasonableness of their reliance was conclusory; and (v) Plaintiffs did not sufficiently specify how they relied on Defendants' misrepresentations or how their damages resulted from their reliance. (*See* Opinion at 12-16; *see generally* Pl. Moving Br.; Pl. Reply Br.). Plaintiffs instead mostly argue that their Proposed Complaint contains sufficient factual allegations to meet the third element: Defendants intended for Plaintiffs to rely on the misrepresentations. (*See* Pl. Moving Br. at 16-19.) But the Magistrate Judge did not explicitly address that element in his decision. (*See* Pl. Moving Br. at 16-19; Opinion at 12-16). In other words, besides their general contention that the fraud claim is not futile, Plaintiffs have not

identified where they believe the Magistrate Judge clearly erred or misapplied the law. (*See* Pl. Moving Br. at 16-19). In fact, Plaintiffs do not cite to the Magistrate Judge's decision in the section of their brief discussing the fraud claim. (*See id.*).

Additionally, the Court cannot conclude that the Magistrate Judge erred or misapplied the law with respect to the fraud claims. As the Proposed Complaint stands, the factual allegation that the Port Authority's promotional announcements somehow created a general understanding that the Port Authority would conduct the promotional process in good faith when it had no intention of doing so cannot form the basis of a material misrepresentation. (*See, e.g.*, Proposed 6th Am. Compl. ¶¶ 92, 110, 152 & 2336). Federal Rule of Civil Procedure 9(b) requires more specificity "[t]o place [D]efendants"—especially Defendants Fedorko, Ferrigno, Tagarelli, and Brazicki—"on notice of the precise misconduct with which [they are] charged . . . ." *See Hlista*, 649 F. App'x at 221.

Plaintiffs have failed to allege which alleged misrepresentations each of the 56 Plaintiffs relied upon. (*See generally* Proposed 6th Am. Compl.). Plaintiffs also have failed to plead anything beyond a "mere conclusory statement[]" in support of the reasonableness of their reliance:

> These representations were material to the promotional process, and the Plaintiffs rightfully relied on said representations, believing them to be true. As a result, the Plaintiffs spend time and money in preparing for the promotional exam, which was directly caused by their reliance on the representations of the Defendants.

(Prop. 6th Am. Compl. ¶¶ 2328-29); *see Iqbal*, 556 U.S. at 678-79 ("[T]he tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . While legal conclusions can provide the framework of

a complaint, they must be supported by factual allegations."). Similarly, Plaintiffs have not adequately pleaded how their damages flowed from their reliance on the alleged misrepresentations. (*See* 6th Am. Compl. ¶¶ 2328-29); *Iqbal*, 556 U.S. at 678-79.

The Court affirms the Magistrate Judge's December 18 Decision on Count IV of Plaintiffs' Proposed Complaint.

## IV.    CONCLUSION

For the reasons above, the Court AFFIRMS the Magistrate Judge's December 18 Decision (D.E. Nos. 150 & 151) partially denying Plaintiffs' motion for leave to file a Sixth Amended Complaint (D.E. No. 145). An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
